# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **W.H. BRESHEARS, INC.,**<br><br>Plaintiff<br><br>v.<br><br>**DELAWARE NORTH COMPANIES PARKS AND RESORTS AT YOSEMITE, INC., and DOES 1-10,**<br><br>Defendants<br><br>―――――――――――――――――<br>AND RELATED COUNTERCLAIM | CASE NO. 1:16-CV-1129 AWI SAB<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR FEES**<br><br>(Doc. No. 7) |

This is a contract dispute between Plaintiff W.H. Breshears, Inc. ("Breshears") and Defendant Delaware North Companies Parks and Resorts at Yosemite, Inc. ("DNC"). Breshears alleges claims under California state law relating to a breach of contract, based on DNC's failure to pay for automotive fuel. DNC removed this case from the Stanislaus County Superior Court on the basis of diversity jurisdiction.[1] Currently before the Court is Breshears's motion to remand and request for attorney's fees. For the reasons that follow, both the motion to remand and request for attorney's fees will be granted.

## BACKGROUND

The Complaint, which is on a pre-printed state form, alleges that Breshears and DNC

---

[1] Breshears does not dispute that diversity jurisdiction exists. The Complaint requests approximately $278,000 in damages, and the notice of removal indicates that Plaintiff is a California corporation with its principal place of business in California, and DNC is a Delaware corporation with its principal place of business in New York. See Doc. No. 1 at ¶¶ 9, 10, 11 & Ex. B. Thus, the amount in controversy exceeds $75,000.00, and there is complete diversity between the parties. See 28 U.S.C. § 1332; Harris v. Rand, 682 F.3d 846, 848-51 (9th Cir. 2012); Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

entered into a contract on October 28, 2013 ("2013 Contract"). See Doc. No. 1-2 & Ex. A to Complaint. DNC agreed to buy various grades of gasoline and diesel fuel from Breshears. See id. The amount and price of the fuel was based on DNC's historical and customary business needs, a published "rack rate," and freight charges based on a schedule of locations. See id. & Ex. B to Complaint. DNC refused to pay for certain fuel shipments delivered by Breshears between April 14, 2014 and May 8, 2014, despite Breshears's demand for payment. See Doc. No. 1-2. DNC owed Breshears approximately $278,000.00, plus 2% interest per month, for the delivered fuel. See id.

In part, the 2013 Contract contains a venue provision. That provision reads, "This agreement has been entered into and is to be performed in the State of California, County of Stanislaus, and any action brought hereunder shall be brought in said county and state in the option and in the sole discretion of [Breshears]." Id. at Ex. A to Complaint.

On May 20, 2014, Breshears and DNC entered into another fuel sales agreement ("2014 Contract"). See Doc. No. 5. The 2014 Contract was created because one of DNC's other fuel suppliers, Odgers Petroleum ("Odgers"), was having financial difficulties. See id. at "Recitals." DNC and Odgers had previously entered into a "Fuel Supply Agreement" in June 2013 ("Odgers Contract"). See Doc. No. 5 at Recitals ¶ A. In October 2013 Breshears, DNC, and Odgers entered into a contract ("B/D/O Contract")[2] whereby DNC would purchase fuel directly from Breshears, but other fuel related services (including delivery) would continue to be provided by Odgers. See id. at Recitals ¶ B. Odgers had received all of its fuel from Breshears. See id. at ¶ D. Eventually, Odgers defaulted on its obligations to Breshears. See id. at Recitals ¶ F. As a result, Breshears stopped supplying fuel to Odgers and stopped using Odgers for various services, including fuel delivery to DNC pursuant to the B/D/O Contract. See id. Further, pursuant to the Odgers Contract, DNC invoked a provision of that agreement which permitted Breshears and DNC to replace the B/D/O Contract with the 2014 Contract. See id. at Recitals ¶ G.

The 2014 Contract provided for Breshears to supply and deliver fuel to DNC. See id. The terms and conditions of the 2014 Contract "apply to all purchases of fuel products . . . [that DNC]

---

[2] It appears that the B/D/O Contract was meant to augment the Odgers Contract. See Doc. No. 5 at Recitals ¶ B.

2

makes from [Breshears]." Doc. No. 5 at § 1. Under the "Term: Termination" section, the fuel products to be purchased was for a "primary term commencing on May 20 and shall end on October 19, 2014 (the Term)." Id. at § 3. Further, under a section entitled "Governing Law and Venue," the 2014 Contract provided that "the parties irrevocably and unconditionally submit to the exclusive jurisdiction of any state or federal court sitting in California in any litigation arising out of or relating to this Agreement." Id. at § 18. Finally, the "Entirety" section provided that the 2014 Contract "constitutes the entire agreement between the parties, and supersedes all prior agreements and understanding, both written and oral, among the parties with respect to the subject matter of this Agreement." Id. at § 23.

On June 1, 2016, Breshears filed this lawsuit in the Stanislaus County Superior Court. See Doc. No. 1-1. DNC removed the case on August 1, 2016. DNC filed an answer and counterclaim on August 8, 2016. See Doc. No. 3. The Counterclaim involves a request for indemnification in connection with a diesel fuel spill at a DNC facility in January 2015.

## PLAINTIFF'S MOTION

**I.** **Motion To Remand**

*Plaintiff's Argument*

Breshears argues that this case should be remanded because of the forum selection clause in the 2013 Contract. That venue provision is mandatory and sets venue in the Stanislaus County Superior Court. The forum selection clause is not ambiguous and is fully enforceable.

In reply, Breshears argues that the 2014 Contract has no application. The 2014 Contract was meant to replace the contracts involving/relating to Odgers, it was not meant to replace the 2013 Contract. Also, by its own terms, the 2014 Contract only applies to a limited time period. The basis of this lawsuit is conduct that occurred prior to the effective date of the 2014 Contract.

*Defendant's Argument*

DNC argues that the 2014 Contract's integration clause states that the 2014 Contract is the entire agreement between the parties and supersedes all prior agreements and understandings. Thus, Pursuant to the integration clause, the 2013 Contract is superseded and no longer applies.

3

Breshears cannot submit any parole evidence to contradict the 2014 Contract.  The 2014 Contract contains a venue provision whereby Breshears submitted to the exclusive jurisdiction of any state or federal California court.  Since this Court sits in California, venue in the Fresno Division of the Eastern District of California is proper under the 2014 Contract.

*Discussion*

1.      2013 Contract v. 2014 Contract

The California Supreme Court has explained the principles of contract interpretation:

> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties.  Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation. . . .  But language in a contract must interpreted as a whole, and in the circumstances of the case . . . .

MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 647–648 (2003) (citations and internal quotations omitted); see also Sequeira v. Lincoln Nat'l Life Ins. Co., 239 Cal.App.4t h 1438, 1445 (2014).  Here, the parties dispute which contract governs Breshears's claims, either the 2013 Contract or the 2014 Contract.  After considering the contracts and the arguments of the parties, the Court concludes that the 2013 Contract governs.

DNC relies heavily on the 2014 Contract's integration clause.  As quoted above, the integration clause "supersedes all prior agreements and understandings . . . among the parties with respect to the subject matter of this Agreement."  Doc. No. 5 at § 23.  By its own terms, the integration clause does not apply to all agreements that DNC and Breshears may have had.  Rather, § 23 makes clear that only prior agreements "with respect to the subject matter of [the 2014 Contract]" are superseded.  See id.  Thus, the key is to determine what the subject matter of the 2014 Contract is.  The Court concludes that the "Recitals," "Scope of the Agreement," and "Term" sections of the 2014 Contract determine the subject matter of the 2014 Contract.

The "Recitals" section explains that the 2014 Contract came about because of the financial difficulties and inability of Odgers Petroleum to provide fuel to DNC.  See Doc. No. 5 at "Recitals."  More particularly, the the 2014 Contract was meant to replace the B/D/O Contract.

See id. at Recital G.  As discussed above, the B/D/O Contract provided for DNC to purchase fuel from Breshears, but Odgers Petroleum would deliver the fuel to DNC.  See id. at Recital B.  Accordingly, the Recitals indicate that the 2014 Contract was meant to deal with the fuel that Odgers Petroleum had been delivering to DNC.  See id. at Recitals A, B, F, G.

The "Scope of the Agreement" section states that it applies to all purchases of fuel that DNC makes from Breshears.  See Doc. No. 5 at § 1.  That section further provides that, during the "Term" of the 2014 Contract, DNC was to purchase all of its fuel requirements for certain locations from Breshears.  See id.  The Scope is consistent with addressing the problems arising from the parties' relationship with Odgers Petroleum.  The fuel that would have been purchased from and delivered by Odgers Petroleum to DNC under the Odgers Contract and the B/D/O Contract would now be supplied and delivered by Breshears.  See id. & §§ 2, 8.[3]  The language of the Scope section is broad in that it applies to all purchases of fuel by DNC for certain locations from Breshears.  Nevertheless, there is the critical limitation that the 2014 Contract applies to purchases made during the "Term."  See id. at § 1.

The "Term" section states that the 2014 Contract will be for a "primary term commencing on May 20 and shall end on October 19, 2014) ('the Term')."  See id. at § 3.  The "Term" section also provides for methods of termination, but it does not provide for an extension or renewal of the "Term," nor does it provide for retroactive application of the 2014 Contract.  See id.  Therefore, the 2014 Contract is in force only from May 20, 2014 to October 19, 2014.

From these sections, the 2014 Contract was intended in part to address the elimination of Odgers Petroleum as a supplier of fuel and related services to DNC.  The broad language of § 1, however, goes beyond merely making up for the elimination of Odgers Petroleum because the language states that the 2014 Contract was to cover all purchases of fuel by DNC for certain locations.  Nevertheless, the 2014 Contract is finite.  It only applies to fuel purchases between May 20, 2014, and October 19, 2014.  That is, the 2014 Contract only applies to fuel purchases by DNC from Breshears that occur within a 5 month window.  Therefore, the integration clause supersedes only "prior agreements" for fuel to the extent that the fuel was purchased by DNC for

---

[3] Section 2 lists the fuel products that were to be purchased, and Section 8 provides for Breshears to deliver the fuel.

5

certain locations between May 20, 2014 and October 19, 2014.

Here, the purchases that form the basis of Breshears's claims occurred between April 14, 2014 and May 8, 2014. The purchases pre-date the May 20 effective date of the 2014 Contract and thus, do not fit within that contract's effective Term. Therefore, the 2014 Contract does not govern Breshears's claims; instead, the 2013 Contract governs.

### 2. Forum Selection Clause

Generally, if a forum selection clause specifies venue with mandatory language, the clause will be enforced. See Atlantic Marine Constr. Co. v. United States Dist. Ct., 134 S.Ct. 568, 581 (2013); see also Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). It is the party resisting the forum selection clause who bears a heavy burden of demonstrating that enforcement of a mandatory forum selection clause is unreasonable. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996). A forum selection clause is unreasonable if: (1) the clause was included in the agreement as a result of fraud or overreaching; (2) the resisting party would effectively be deprived of his day in court if the clause were enforced; or (3) enforcement would contravene a strong public policy of the forum in which suit is brought. Petersen v. Boeing Co., 715 F.3d 276, 280 (9th Cir. 2013).

Here, the 2013 Contract provides that any lawsuit "shall be brought in [Stanislaus] county in the option and in the sole discretion of [Breshears]." DNC does not dispute that, once invoked by Breshears, the forum selection clause becomes mandatory. See Northern Cal., 69 F.3d at 1037; Docksider, 875 F.2d at 764; CoStar Realty Info., Inc. v. Meissner, 604 F.Supp.2d 757, 771 (D. Md. 2009); Eisaman v. Cinema Grill Sys., 87 F.Supp.2d 446, 449-50 (D. Md. 1999); see also CQL Original Products, Inc. v. NHL Players' Ass'n, 39 Cal.App.4th 1347, 1351, 1358 (1995). Furthermore, when a forum selection clause sets venue "in" a particular County, then venue is appropriate in any state or federal court that sits in that County. See Simonoff v. Expedia, Inc., 643 F.3d 1202, 1206-07 (9th Cir. 2011); Alliance Health Group LLC v. Bridging Health Options LLC, 553 F.3d 397, 400 (5th Cir. 2008). Although Stanislaus County is encompassed within the

6

Fresno Division of the Eastern District of California, see Local Rule 120(d), no federal court actually sits in Stanislaus County.[4]  Therefore, the mandatory forum is the state courts in Stanislaus County.  See Simonoff, 643 F.3d at 1207; Docksider, 875 F.2d at 764.

DNC makes no argument that the forum selection clause is unreasonable or unenforceable.  See Argueta, 87 F.3d at 325.  Because DNC has not shown that the clause is unreasonable, the Court will enforce the forum selection clause and remand this matter to the Stanislaus County Superior Court.  See Kamm v. ITEX Corp., 568 F.3d 752, 757 (9th Cir. 2009) (affirming remand on the basis of a forum selection clause that specified a state forum).

## II.    Request For Attorneys' Fees

*Plaintiff's Argument*

Breshears argues that the forum selection clause is part of the 2013 Contract between it and DNC, and the contract was attached as an exhibit to the Complaint.  When a proposal was made to stipulate to a remand, DNC refused to do so without explanation.  A reasonable litigant would have agreed to the remand given the mandatory nature of the forum selection clause.  Because no objectively reasonable basis existed for removal, an award of attorney's fees in the amount of $4,200 should be made based on 14 hours of work performed or to be performed.

In reply, Breshears argues that the 2014 Contract is not a reasonable basis for removal.  The plain language of the 2014 Contract shows that it does not apply to this dispute.  Further, the declaration of counsel provides sufficient specificity for an award of fees.

*Defendant's Opposition*

DNC argues that an award of fees is not proper because it had an objectively reasonable basis for removal.  The forum selection clause of the 2014 Contract makes clear that a federal forum is an appropriate venue.  Further, as discussed above, the integration clause of the 2014 Contract makes the 2013 Contract inapplicable.  Alternatively, the evidence submitted in support of Breshears's fee request is insufficient.  There are only cursory descriptions of the work performed and there is no way of discerning whether the 14 hours expended were reasonable.

---

[4] See http://www.caed.uscourts.gov/caednew/index.cfm/clerks-office/court-directions/.

*Legal Standard*

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1064 n.4 (9th Cir. 2008). "[T]he standard for awarding fees should turn on the reasonableness of the removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); Lussier, 518 F.3d at 1065. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin, 546 U.S. at 141; Lussier, 518 F.3d at 1065.

In the Ninth Circuit, courts use the lodestar method to calculate attorney fee awards under § 1447(c). Sankary v. Ringgold, 601 Fed. Appx. 529, 530 (9th Cir. 2015); Albion Pac. Prop. Res., LLC v. Seligman, 329 F. Supp. 2d 1163, 1166 (N.D. Cal. 2004). Under the lodestar method, the district court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. McCown v. City of Fontana, 565 F.3d 1097, 1102 (9t h Cir. 2009). "The applicant has an initial burden of production, under which it must 'produce satisfactory evidence' establishing the reasonableness of the requested fee." United States v. $28,000.00 in United States Currency, 802 F.3d 1100, 1105 (9th Cir. 2015). With respect to a reasonable hourly rate, the moving party must show that the requested rate is in line with those prevailing in the community (generally the forum in which the district court sits) for similar services by lawyers of reasonably comparable skill, experience and reputation. Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110 (9th Cir. 2014). With respect to expended hours, the moving party "should provide documentary evidence to the court concerning the number of hours spent," and hours that are "excessive, redundant, or otherwise unnecessary" should be excluded. McCown, 565 F.3d at 1102. "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended," even "minimal" descriptions that establish that the time was spent on matters on which the district court may award fees is sufficient. Lytle v. Carl, 382 F.3d 978, 989 (9th Cir. 2004). Counsel need only "identify the general subject matter of [their] time expenditures." Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 234

F.3d 415, 427 (9th Cir. 2000). However, where "the documentation is inadequate, the district is free to reduce an applicant's fee award accordingly." Id.

*Discussion*

1. <u>Objectively Reasonable Basis For Removal</u>

It was possible for Breshears to waive enforcement of the forum selection clause and choose to litigate in this Court because the clause was mandatory "at the option and in the sole discretion of [Breshears]." See Doc. No. 1-1 at Ex. A to Complaint; Coppetti Dec. ¶ 11. But, on August 9, 2016, Breshears made it known to DNC that it would enforce the forum selection clause, and inquired whether DNC would stipulate to a remand. See Scott Dec. Ex. 1. DNC did not stipulate, and the reason for not stipulating appears to be DNC's belief that the 2014 Contract superseded the 2013 Contract, which would make venue proper in this Court.

It is true that the 2014 Contract contained an integration clause that superseded prior agreements on the same subject as the 2014 Contract. However, as explained above, the subject matter of the 2014 Contract was for fuel purchases by DNC from Breshears between May 20, 2014 to October 19, 2014. By its own terms, the 2014 Contract was only intended to be in effect for five months. The fuel purchases at issue in this case all occurred prior to May 20, 2014. DNC has provided no basis for the Court to conclude that the fuel purchases are governed by anything other than the 2013 Contract. The Court agrees with Breshears that the plain language of the 2014 Contract demonstrates that it does not apply to the fuel purchases that are the subject of Breshears's Complaint.[5]

Given the plain language of the 2014 Contract, and the arguments made by DNC, there was not an objectively reasonable basis for removal. Therefore, the Court will award attorney's fees pursuant to 28 U.S.C. § 1447(c). See Martin, 546 U.S. at 141; Lussier, 518 F.3d at 1065.

2. <u>Amount Of Attorney's Fees</u>

a. <u>Reasonable Rate</u>

Breshears requests a rate of $300 per hour for the work performed by its counsel, Graham Scott. See Scott Dec. ¶ 6. Scott declares that he has eleven years of experience, and that this rate

---

[5] The Court expresses no opinion as to the applicability of the 2014 Contract to DNC's counterclaim.

9

1  is reasonable and in accordance with the customary rates charged in Stanislaus County. See id.
2  DNC does not address the $300 per hour rate requested by Breshears. For attorneys with more
3  than 10 years of experience in the Fresno Division of the Eastern District of California, see
4  Chaudhry, 751 F.3d at 1110, a rate of $300 per hour is a reasonable rate. See In re Taco Bell
5  Wage & Hour Actions, 2016 U.S. Dist. LEXIS 92360, *49 (E.D. Cal. July 15, 2016) (finding a
6  ranger of $250 to $350 for attorneys with less than 15 years of experience); Silvester v. Harris,
7  2014 U.S. Dist. LEXIS 174366, *11-*13 (E.D. Cal. Dec. 17, 2014) (finding $300 per hour to be
8  the upper ranger for attorneys with 10 years or less experience). Given Scott's eleven years of
9  experience, $300 per hour is a reasonable rate for Scott's work.

          b.     Hours Expended

11  Scott declares that he billed Breshears 12 hours to prepare the motion to remand and the
12  supporting documentation. See Scott Dec. ¶ 7. This includes all research and client
13  communications. See id. Scott states that he expects to bill Breshears 2 hours in which to prepare
14  a reply and to appear at the hearing. See id. Breshears's reply did not contain any additional
15  information or evidence regarding the hours expended.
16  With respect to the 12 hours to compose the motion to remand, Scott does not provide
17  much detail, nor does he break down the 12 hours into specific components. However, Scott does
18  declare that the 12 hours is composed of writing, research, and client communication regarding the
19  motion. The remand motion consisted of a notice, a memorandum in support of the motion, a
20  declaration from an officer of Breshears, and a declaration from Scott. See Doc. No. 7. Breshears
21  could have supplied greater detail and specificity. However, minimal specificity is all that is
22  required. See Lytle, 382 F.3d at 989; Tise, 234 F.3d at 427. Given the nature of the motion and
23  the description provided of the hours expended, the Court can conclude that 12 hours (consisting
24  of writing, research, and client communication) to prepare the remand motion is reasonable. Cf.
25  Done Deal, Inc. v. Wilbert, 2013 U.S. Dist. LEXIS 108525, 9-11 (E.D. Cal. July 31, 2013)
26  (relying on a minimal declaration of counsel to conclude that 11 hours to prepare a motion to
27  remand was reasonable). Therefore, the Court will not deduct any time from the 12 hours spent on
28  the motion to remand.

With respect to the 2 hours for a reply and to attend a hearing, the Court will not award these hours. First, there was no hearing in this case. The matter was taken under submission without oral argument. See Doc. No. 16. Therefore, no part of the fees awarded can encompass attending a hearing. Second, although it is apparent that some time was spent preparing the reply, Breshears provided no additional information regarding the specific amount of time. It is unknown how much time counsel actually spent preparing the reply, especially considering that the 2 hour estimate included attendance for a non-existent hearing. Without additional information, the Court declines to speculate how much time was expended on the reply. Cf. Tise, 234 F.3d at 427 ("Where documentation is inadequate, the district is free to reduce an applicant's fee award accordingly.").

    c.    Total Amount

The lodestar amount for 12 hours of work at $300 per hour is $3,600.00. Therefore, the Court will award Breshears $3,600 pursuant to 28 U.S.C. § 1447(c).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand (Doc. No. 7) is GRANTED;
2. Pursuant to 28 U.S.C. § 1447(c), Plaintiff is awarded $3,600 in fees against Defendant;
3. This matter is REMANDED forthwith to the Stanislaus County Superior Court; and
4. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   November 29, 2016                                         
                                                  SENIOR DISTRICT JUDGE